IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY MONTGOMERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-1954-M-BN |
| | § | |
| STERLING HOLLINS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Rodney Montgomery, through counsel, brought this civil rights action under 42 U.S.C. § 1983 against the City of Dallas and eight current or former Dallas police officers, alleging that one officer, Defendant Sterling Hollins, used excessive force against him while other officers stood by. Montgomery's lawsuit has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from Chief Judge Barbara M. G. Lynn. *See* Dkt. No. 6.

The City answered Montgomery's initial complaint. *See* Dkt. No. 7. After Defendants Hollins, Danquell Cameron, Marty Hotchkiss, Kristopher Mendoza, Rene Villanueva, Lawrence Christian, Fernando Del Rio, and Jacob Alanis (collectively the "Officer Defendants") moved to dismiss the initial complaint, *see* Dkt. No. 17, Montgomery filed an amended complaint, *see* Dkt. No. 20, and a response to the Officer Defendants' motion to dismiss, *see* Dkt. No. 21. The amended complaint drops Alanis. *See* Dkt. No. 20 at 1-3.

The Officer Defendants then filed a reply brief, *see* Dkt. No. 25, explaining that "the Plaintiff's bystander claims against Officers Cameron, Hotchkiss, Mendoza, Villanueva, Christian, and Del Rio continue to suffer from the same fatal pleading and legal flaws found in the original complaint" and requesting that the Court consider their motion to dismiss "as being directed solely towards the bystander liability claims alleged against them in the amended complaint," *id.* at 1 n.2.

The same day, the City moved to dismiss the amended complaint, *see* Dkt. No. 26, and Hollins answered the amended complaint, *see* Dkt. No. 27. Montgomery responded to the City's motion to dismiss. *See* Dkt. Nos. 29, 30, 31, 32, & 33. And the City filed a reply. *See* Dkt. No. 34.

Thus, before the Court now are the remaining Officer Defendants' motion to dismiss bystander liability claims asserted against them and the City's motion to dismiss the claims asserted against it.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons explained below, the Court should grant in part and deny in part the Officer Defendants' motion to dismiss [Dkt. No. 17] and grant the City's motion to dismiss [Dkt. No. 26].

## Legal Standards

In deciding motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). But a

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory

statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project*, 920 F.2d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

-4-

While the United States Court of Appeals for "the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

## Discussion

### I.   Bystander Liability

Preliminarily, Montgomery's dropping Alanis in the amended complaint means that Alanis "is no longer part of this lawsuit." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 246 n.2 (5th Cir. 2010) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." (citation omitted))).

But the general rule that an amended complaint renders the original complaint of no legal effect does not mean that the Court should not honor Cameron, Hotchkiss, Mendoza, Villanueva, Christian, and Del Rio's request that the Court consider their motion to dismiss the original complaint as directed at the amended complaint – their alleged defects as to Montgomery's bystander liability claims also, in their view, appear

in the complaint as amended. *See Holmes v. Nat'l Football League*, 939 F. Supp. 517, 522 n.7 (N.D. Tex. 1996) ("Although Holmes' amended complaint supersedes his original complaint, the court may nevertheless treat defendants' motion as directed to the amended complaint because the defects in Holmes' complaint reappear in the amended complaint. Moreover, Holmes neither contends that the court should require that defendants move for dismissal anew, nor that he will suffer prejudice from the use of this procedure." (citation omitted)); *Hanks v. Rogers*, No. 3:13-cv-4894-P, 2014 WL 12691593, at *2 (N.D. Tex. June 30, 2014) ("So long as the amended complaint, as the City argues, does not change the purported defects the City points to in its Second Motion to Dismiss, the Court will consider the Second Motion to Dismiss as being addressed to the amended pleading." (collecting authority)).

As set out above, Montgomery does not claim that either Cameron, Hotchkiss, Mendoza, Villanueva, Christian, or Del Rio used force against him that was excessive. Montgomery instead alleges that they are liable for Hollins's alleged use of excessive force against him. And it is generally accepted that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (citations omitted); *accord Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

This holding "is consistent with other circuits' determination that an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a

-6-

reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002); footnote and citations omitted).

> [First,] a bystanding officer must know of his fellow officer's misconduct. The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer. If the bystander lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible.

*Randall*, 302 F.3d at 204 n.24; *see also Whitley*, 726 F.3d at 646-47 ("[L]iability will not attach where an officer is not present at the scene of the constitutional violation." (footnote and citations omitted)).

But an officer's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." *Calvi v. Knox Cnty.*, 470 F.3d 422, 428 & n.3 (1st Cir. 2006) (further noting, "[t]o be sure, a bystander-officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for a failure to intervene" (citations omitted)); *see also Garrett v. Crawford*, No. SA-15-CV-261-XR, 2016 WL 843391, at *9 (W.D. Tex. Mar. 1, 2016) ("Simply being present at the scene of the alleged use of excessive force, without more, does not give rise to a cognizable claim for failure to intervene. A necessary inquiry in a failure to intervene claim is whether the police officer 'had a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it.'" (citing *Vasquez v. Chacon*, No. 3:08-cv-2046-M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009); quoting *Hale*, 45 F.3d at

919)).

As such, "[a] reasonable opportunity to intercede and prevent the constitutional violation is '[t]he focus of the bystander-liability inquiry.'" *Taplette v. LeBlanc*, Civ. A. No. 18-853-EWD, 2019 WL 1560444, at *6 n.63 (M.D. La. Apr. 10, 2019) (quoting *Malone v. City of Fort Worth, Tex.*, No. 4:09-cv-634-Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014)). And, "[i]n resolving whether a plaintiff has sufficiently alleged a bystander liability claim [courts] also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Whitley*, 726 F.3d at 647 (citations omitted); *see Peavy v. Dallas Indep. Sch. Dist.*, 57 F. Supp.2d 382, 390 n.4 (N.D. Tex. 1999) ("In *Hale*, the court held, pursuant to longstanding Fifth Circuit precedent, that a police officer had a duty not to acquiesce in another officer's use of excessive force by refusing to take measures to stop the use of such excessive force.").

"In making the determination of whether or not an officer acquiesced to the excessive force, courts consider the duration of the alleged use of force and the location of the suspect in relationship to the observing officer." *Garrett*, 2016 WL 843391, at *9 (citing *Malone*, 2014 WL 5781001, at *15-*16). This determination turns on the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts. *See, e.g., id.* at *9-*10 (comparing the facts there to the those alleged in *Robinson v. City of Garland, Tex.*, No. 3:10-cv-2496-M, 2015 WL 9591443 (N.D. Tex. Nov. 23, 2015), *rec. adopted*, 2015 WL 9593623 (N.D. Tex. Dec. 31, 2015), and *Dwyer v. City of Corinth, Tex.*, No. 4:09-CV-198, 2009 WL 3856989 (E.D. Tex. Nov. 17, 2009)); *see also Douglas v. DePhillips*, Civ. A. No. 17-2305, 2017 WL 4574422, at *11 (E.D. La. Oct. 13,

2017) ("Given the alleged speed with which the incident unfolded, the factual allegations cannot be reasonably construed to support the inference that Deputies Kelly and Jenkins 'acquiesced in the alleged use of excessive force.'" (quoting *Hale*, 45 F.3d at 919)).

So, to determine whether Montgomery has plausibly alleged a bystander liability claim against a particular officer, in addition to alleging that officer's presence, Montgomery must also allege facts to show – or from which the Court may reasonably infer – that the officer's presence related to the allegedly excessive force alerted that officer to act and gave that officer time to intervene. And, for the reasons explained below, Montgomery plausibly alleges a bystander liability claim against only one officer.

Taking first the nature of the force claimed to be excessive, Montgomery alleges that, when he "exited his vehicle, he was put into a hold by Defendant Hollins with Mr. Montgomery's right arm above his head and his left arm behind his back, which resulted in severe muscle pain in his right shoulder." Dkt. No. 20, ¶ 21. But, while this hold may have been visible to some of Hollins's fellow officers, Montgomery does not allege how long the hold lasted, which prevents the Court from drawing an inference that all officers present – regardless of their proximity to Hollins – had a reasonable opportunity to act to prevent this alleged harm but chose not to do so. *See, e.g., Robinson*, 2015 WL 9591443, at *7 (opportunity to intervene alleged where force lasted 4 to 5 minutes); *Dwyer*, 2009 WL 3856989, at *6 (opportunity to intervene alleged where officer used a TASER on the plaintiff 15 times in a row); *Garrett*, 2016 WL

843391, at *10 (opportunity to intervene alleged where the plaintiff was shocked for over one minute).

Not knowing the duration of the second allegedly excessive force applied also prevents the Court from drawing the same broad inference. Hollins alleges that Montgomery then "'frisked'" him and, in doing so, "grabbed his testicles and squeezed so hard that [he] was forced to go to the VA hospital the following day where he was diagnosed with epididymitis – an inflammation of the long tube behind the testicle, which can be caused by trauma or injury to the testicles." Dkt. No. 20, ¶ 21. What's more, while the Court may plausibly infer that the hold applied by Hollins may have been highly visible to other officers – as its alleged that Holllins put Montgomery's "right arm above his head" – the opposite is true of Hollins's allegedly applying excessive force to Montgomery's testicles during a frisk.

Without knowing the duration of the two acts, the Court may only infer that an officer alleged to be standing next to Hollins and Montgomery would have had a reasonable opportunity to intervene. Turning to the allegations specific to each officer's proximity, only Cameron may have had that opportunity, as Montgomery alleges that Cameron arrived with Hollins, was present when Montgomery was removed from the vehicle, opening the car door for Montgomery. *See id.*, ¶¶ 19 & 24. In contrast, Mendoza is alleged to have been standing "in the rear of the vehicle" when Montgomery was removed from the car and patted down, *id.*, ¶¶ 26 & 30, and Hotchkiss is alleged to have been present before Montgomery was removed from the car, in earshot of his being ordered out of the car, and to have spoken to Montgomery

after the pat down, *see id.*, ¶ 25, while the alleged proximity of Villanueva, Christian, and Del Rio to Hollins's alleged use of force is even more removed, *see id.*, ¶ 29 ("Defendant Villanueva stated during the Internal Affairs investigation that he observed Mr. Montgomery standing next to his vehicle with other officers."); *id.*, ¶ 27 ("Defendant Christian stated in the Internal Affairs investigation that at least one uniform element, maybe two, along with the deployment officer, were already present prior to Defendant Christian and Defendant Del Rio's arrival. Defendant Christian stood by Mr. Montgomery to help watch him while responding officers figured out what they were going to do."); *id.*, ¶ 28 ("Defendant Del Rio arrived with Defendant Christian.").

The Court should therefore grant the motion to dismiss as to Montgomery's claims against Hotchkiss, Mendoza, Villanueva, Christian, and Del Rio. And, because Montgomery filed an amended complaint after being apprised of the deficiencies in his original allegations against these defendants, the Court should dismiss these claims with prejudice.

II.    <u>Municipal Liability</u>

Montgomery appears to allege two (or possibly three) theories of municipal liability – that the City failed to train and to supervise its officers, *see id.*, ¶¶ 86-89; that the City "is liable because a pattern, practice or policy of constitutional violations existed and/or was grossly inadequate training that was likely to result in constitutional violations," *id.*, ¶ 91; and (possibly) ratification, *see id.*, ¶¶ 75-77. And, [t]hough [Montgomery] need not offer proof of [his] allegations at this stage, [he] still

must plead facts that plausibly support each element of § 1983 municipal liability under [each] theory." *Peña*, 879 F.3d at 621 (citing *Iqbal*, 556 U.S. at 678).

### A.    Policy Liability

Taking the second theory first, "[a] municipality and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of*

*Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

Here, Montgomery alleges that "the Dallas Police Department had a policy or custom of tolerating the use of excessive force by its police officers, as demonstrated by the abuse and assault of Plaintiff by Defendant Hollins ... and a pattern of prior similar incidents of abusive police conduct." Dkt. No. 20, ¶ 47.

> If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.

> *Webster*, 735 F.2d at 842. "Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather[,] ... notice of a pattern of similar violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired[.]" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes and citations omitted).

*Pinedo*, 2015 WL 5021393, at *5.

In the amended complaint, Montgomery cites 13 specific "prior similar incidents of abusive police conduct," from October 2008 to August 2015. *See* Dkt. No. 20, ¶¶ 49-61. Based on Montgomery's summaries of these incidents, three of these did not involve a use of force. *See id.*, ¶¶ 54, 56, & 60. Two involved deadly force. *See id.*, ¶¶ 57-58. And, it should be said, as to all prior incidents cited that involved a use of force, even the use of deadly force "does not establish *per se* that the officer used *excessive* force." *Pinedo*, 2015 WL 5021393, at *6 (citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).

Further, the City agrees that the Court may take judicial notice of an order – referenced in Montgomery's response to the motion to dismiss, *see* Dkt. No. 33 at 10 – entered by another judge of this Court, denying the City's motion to dismiss after finding "that Plaintiff has alleged sufficient factual content to support his section 1983 claim against the City." Dkt. No. 47 (order entered Oct. 21, 2014 in *Randolph Glenn v. Officer Bunthavuth Te, et al.*, No. 3:13-cv-4446-N (N.D. Tex.)), a case the City characterizes as involving deadly force and thus distinguishable, *see* Dkt. No. 34 at 2 n.2. And Montgomery requests that the Court take judicial notice of a "Brady Worksheet" represented as prepared by the Dallas County District Attorney's Office, *see* Dkt. No. 32, which Montgomery states is the list referenced in paragraph 63 of the amended complaint, *see* Dkt. No. 33 at 19 & n.4; *see also* Dkt. No. 20, ¶ 63 ("A list was recently released of Dallas Police Department officers who have been found to have committed such violations as lying, using drugs, and make false reports. Such list had previously been kept secret. The minimal disciplinary action taken against the officers

on the list is shocking, generally consisting of a few days of suspension.").

The Brady Worksheet provides few factual details, but examining it for instances of "force" or "assault" in reference to a Dallas Police Department officer reveals six entries, from 1991 to 2013. *See* Dkt. No. 32. Of those, only four are characterized as "inappropriate use of force" – and the Court lacks further factual details from which it could determine whether these uses of force are fairly similar to the use of force Montgomery alleges. *See id.*

So, even if the Court takes judicial notice of the Brady Worksheet, Montgomery has pointed to only 17 specific instances of force or assault by a Dallas officer that occurred prior to the events alleged in the amended complaint – from as early as 1991 to as recent as August 2015. But, given the size of the Dallas police force, these allegations do not plausibly allege "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582; *see Moreno v. City of Dallas*, No. 3:13-cv-4106-B, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) ("Although Plaintiff has pointed to eight instances, over the course of five years, in which an officer wounded or killed an individual, these allegations do not support an inference of a pattern of abuses that can be distinguished from mere isolated incidents. In view of the size of the Dallas Police Department, and bearing in mind courts' prior holdings in similar cases, facts suggesting an average of less than two incidents of excessive force per year over the course of five years are not sufficient to indicate a pattern of abuses, especially without any further context from Plaintiff." (citations omitted)); *Pinedo*, 2015 WL 5021393, at *7 ("Although Pinedo has alleged that 25 shootings of unarmed individuals

occurred over a period of six years, he has only pleaded factual details concerning ten of them. Even if the court assumes *arguendo* that all ten present factual circumstances that are similar to the facts of the instant case, ten incidents occurring over a six-year period in a city the size of Dallas – on average, about 1½ per year-are numerically insufficient to support an inference of a persistent and widespread practice of the use of excessive force." (citation omitted)); *see also Peterson*, 588 F.3d at 851 & n.4 (as to the Fort Worth Police Department, "[t]wenty-seven [complaints of excessive force] in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy").

While the City claims that the amended complaint also fail as to *Monell*'s policymaker prong, at this stage, a "complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Peña*, 879 F.3d at 623 (quoting *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016)). Thus, "courts should not 'grant motions to dismiss for failing to plead [a] specific identity.'" *Id.* at 622-23 (quoting *Grooden*, 826 F.3d at 286). And, although "[a] city cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker," *id.* (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)), "[c]onstructive knowledge may be attributed to [a policymaker] ... where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity," *Hicks-Fields*, 860 F.3d at 808-09 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)). A court

may reasonably infer that documented uses of force by police officers that are alleged to be excessive plausibly receive such publicity.

### B.   Failure to Train or Supervise

"Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Pinedo*, 2015 WL 5021393, at *9 (citations omitted); *but cf. Anderson v. Marshall Cnty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (per curiam) ("Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." (citing *Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."))).

"To plead a plausible claim, [Montgomery] must allege facts that enable the court to draw the reasonable inference that '(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [his] injury.'" *Pinedo*, 2015 WL 5021393, at *9 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)); *accord Peña*, 879 F.3d at 623 (A "failure-to-train theory requires a plaintiff to prove that '1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001))).

Montgomery alleges in a conclusory manner that the City's training of its police

officers is inadequate, and the amended complaint lacks facts regarding that alleged inadequacy from which the Court may reasonably infer that the City's training procedures were inadequate. This absence of "minimal factual allegations" that ultimately could support a showing that the City's training procedures were inadequate – and, further, inadequate as a result of deliberate indifference – requires rejection of this theory of municipal liability. *E.G. by Gonzalez v. Bond*, No. 1:16-cv-68-BL, 2017 WL 3493124, at *6 (N.D. Tex. June 29, 2017) ("Despite the various arguments made by the City, the Court should find that Plaintiffs have made factual allegations in their second amended complaint to state plausible claims based upon failures to train, supervise, and discipline. Plaintiffs have identified training, supervision, and discipline procedures that are inadequate. They have also alleged that the City was deliberately indifferent in adopting the identified policies and that the inadequate policies directly caused their injuries. They have alleged sufficient facts to support these allegations and do not merely rely on conclusions and labels. When considering a motion to dismiss, minimal factual allegations are sufficient to assert a municipal liability claim." (citing *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012))), *rec. adopted*, 2017 WL 3491853 (N.D. Tex. Aug. 14, 2017).

### C.    Ratification

To the extent that Montgomery alleges that the City "ratified the actions of the officers involved by taking no action whatsoever to discipline the officers or require additional training," Dkt. No. 30 at 23 (citing Dkt. No. 20, ¶¶ 75-77); *see also* Dkt. No. 20, ¶ 95; Dkt. No. 30 at 21-23, the Fifth Circuit has held that, "if the authorized

policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final," *Peterson*, 588 F.3d at 849 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

But the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.* (citations omitted)); *accord Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification ... is limited to 'extreme factual situations.'" (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (quoting, in turn, *Peterson*, 588 F.3d at 848))); *see also Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct by Officers Flagg and Jones, while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification." (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)).

The Fifth Circuit has "also explained that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)); *accord Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010); *Davidson*, 848 F.3d at 395; *see, e.g., Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (per curiam) ("The only evidence of ratification Medina identifies is that Ortiz accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defends the deputies' actions in this case. None of these allegations show that Ortiz approved of the use of excessive force or the denial of

medical care." (citation omitted)).

While Montgomery includes factual allegations concerning an internal investigation that occurred as a result of his complaint to the Dallas Police Department, *see* Dkt. No. 20, ¶¶ 31-44, he fails to allege specific facts that could support a ratification theory of municipal liability, particularly given the limitations on this theory as shown by the above-cited cases.

In sum, while Montgomery has yet to allege a plausible claim of municipal liability against the City, for the reasons explained above, and thus the Court should grant the City's motion to dismiss, it also should afford Montgomery an opportunity to amend his claims against the City if he so chooses. Unlike with the Officer Defendants, where Montgomery amended his complaint after the filing of their motion to dismiss, the City chose to file its motion to dismiss only after the amended complaint was filed.

## Recommendation

The Court should grant in part and deny in part the motion to dismiss filed by the remaining individual defendants as directed at the amended complaint [Dkt. No. 17] – dismissing the claims against Defendants Marty Hotchkiss, Kristopher Mendoza, Rene Villanueva, Lawrence Christian, and Fernando Del Rio – and grant the City of Dallas's motion to dismiss the amended complaint [Dkt. No. 26] without prejudice to Plaintiff Rodney Montgomery's amending his allegations against the City within a reasonable time to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 8, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE