IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RODNEY MONTGOMERY** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-1954-M-BN |
| | § | |
| **STERLING HOLLINS, DANQUELL CAMERON, MARTY HOTCHKISS, KRISTOPHER MENDOZA, RENE VILLANUEVA, LAWRENCE CHRISTIAN, FERNANDO DEL RIO, and the CITY OF DALLAS** | § § § § § § § | |
| *Defendants.* | § | |

**<u>PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY</u>**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

NOW COMES Plaintiff, RODNEY MONTGOMERY, and files this Motion for Leave to Conduct Limited Discovery. In support thereof, Plaintiff respectfully shows the Court as follows:

**INTRODUCTION AND BACKGROUND[1]**

On July 7, 2016, a sniper shot and killed five Dallas police officers and injured nine others following a peaceful protest of officer-involved shootings. On July 8, 2016, officers with the Dallas Police Department's Major Crimes Division were attempting to contact Mr. Montgomery's son. Mr. Montgomery's son had been identified as a possible Black Lives Matter supporter, and an anonymous Crime Stoppers tip identified him as stating that he was wanting to do something against law enforcement officials in retaliation for the political problems between police and black citizens of Dallas. Officers contacted Mr. Montgomery at his residence, and he called his son to

---

[1] All facts discussed herein are alleged in Plaintiff's First Amended Complaint. (ECF 20).

allow the police to speak with him. Officers left the residence without any complications with Mr. Montgomery.

On August 1, 2016, Mr. Montgomery went to the City Credit Union ATM near the Police Department's Central Patrol Division in Dallas, Texas. He preferred to use this particular ATM because the police presence in the area made him feel safe while withdrawing cash. When he was finished withdrawing his money, he got into his car and started to drive away. This is when he realized he was being followed by an unmarked car.

He noticed that the man driving the car was the same officer that had been to his home looking for his son on July 8, 2016. Mr. Montgomery pulled to the side of the road to see if the officer would pass him. The officer in the car, Jacob Alanis, requested over police radio that Mr. Montgomery's car be contacted as a flagged terrorist threat. This was done even though Officer Alanis was aware that Mr. Montgomery's son was not in the vehicle and Mr. Montgomery had done absolutely nothing to be considered a threat.

Minutes later seven uniformed police officers contacted Mr. Montgomery as he remained on the side of the road waiting for Officer Alanis to pass. The contacting officers requested Mr. Montgomery exit his vehicle. When Mr. Montgomery asked why he needed to exit, Officer Hollins placed his hand on his gun and directed Mr. Montgomery to exit his vehicle while Officer Danquell Cameron opened the car door.

When Mr. Montgomery, a 62-year-old disabled veteran, complied with officer orders and exited his vehicle, he was put into a hold by Defendant Officer Sterling Hollins, which resulted in severe muscle pain in his right shoulder. Mr. Montgomery did nothing to put Officer Hollins in fear for himself or others prior to being put into the unwarranted hold.

_____
PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY                    P a g e  | 2

Mr. Montgomery was also "frisked" by Officer Hollins who grabbed his testicles and squeezed so hard that Mr. Montgomery was forced to go to the VA hospital the following day where he was diagnosed with epididymitis – an inflammation of the long tube behind the testicle, which can be caused by trauma or injury to the testicles. Mr. Montgomery had not given the officers any reason to believe he was armed or dangerous and the frisk was unnecessary to begin with in this situation. Mr. Montgomery was not resisting or committing any other action that would warrant an officer to squeeze his testicles.

During Officer Hollins' use of excessive force against Plaintiff, Officer Danquell Cameron, stood by, and although witnessing and having the opportunity to stop the assault on Plaintiff, acquiesced to Officer Hollins' actions.

The officers released Mr. Montgomery after it was determined he was not a threat, a fact which was known prior to detaining him.

## ARGUMENTS AND AUTHORITIES

**I.     Court's Order**

This Court ordered that Montgomery may file a motion for leave to conduct limited discovery in order to respond to the qualified immunity issues raised in the summary judgment motion by September 3, 2019. (ECF 43).

This Court ordered that any motion for leave must include: (1) the specific interrogatories, if any, that Montgomery wants to send to Cameron; (2) a list of the specific documents or specific categories of documents, if any, that Montgomery wants to obtain from Cameron; and (3) an explanation of why this discovery is necessary to enable Montgomery to respond to the specific

qualified immunity issues raised in the motion for summary judgment. *Id*.

This court also ordered that the requested discovery must be narrowly tailored to uncover only those facts needed for the Court to rule on the qualified immunity defense and will only be permitted if Cameron's immunity defense turns at least partially on a factual question and the Court is unable to rule on the immunity defense without further clarification of the facts. *Id*.

**II.     Legal Standard for Bystander Liability**

An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

In resolving whether a plaintiff has sufficiently alleged a bystander liability claim the Court must consider whether an officer "acquiesce[d] in" the alleged constitutional violation. *Whitley* at 647 (*see Hale* at 919). "In making the determination of whether or not an officer acquiesced to the excessive force, courts consider the duration of the alleged use of force and the location of the suspect in relationship to the observing officer." *Garrett v. Crawford*, No. SA-15-CV-261-XR, 2016 WL 843391, at *9 (W.D. Tex. Mar. 1, 2016) (citing *Malone v. City of Fort Worth, Tex.*, No. 4:09-cv-634-Y, 2014 WL 5781001 at *15-*16 (N.D.Tex. Nov. 6, 2014)).

**III.    Plaintiff requests limited discovery to respond to the qualified immunity issue raised in Defendant Cameron's Summary Judgment Motion.**

As this Court stated when finding that bystander liability was plausibly alleged against Defendant Cameron, "to determine whether Montgomery has plausibly alleged a bystander liability claim against a particular officer, in addition to alleging that officer's presence,

Montgomery must also allege facts to show – or from which the Court may reasonably infer – that the officer's presence related to the allegedly excessive force alerted that officer to act and gave that officer time to intervene." (ECF 35 at 9).

Defendant Cameron's immunity defense turns at least partially on the following factual questions: (1) Defendant Cameron's location when Defendant Hollins used excessive force on Montgomery and (2) whether Defendant Cameron had time to intervene. Thus, Montgomery seeks leave to conduct limited discovery to clarify these factual questions so that Montgomery can adequately respond to Defendant Cameron's Motion for Summary Judgment.

Montgomery respectfully requests this Court permit him to serve Defendant Cameron with the following Discovery requests:

**INTERROGATORY NO. 1**: Where was Defendant Cameron when Montgomery was pulled from the vehicle?

This interrogatory is narrowly tailored to the factual issue of Defendant Cameron's location when Defendant Hollins used excessive force on Montgomery.

**INTERROGATORY NO. 2**: When Defendant Cameron opened Montgomery's door, did Defendant Cameron remain next to the vehicle while Montgomery was pulled from the vehicle?

This interrogatory is narrowly tailored to the factual issue of Defendant Cameron's location when Defendant Hollins used excessive force on Montgomery.

**INTERROGATORY NO. 3**: Where was Defendant Cameron when Montgomery was getting out of the vehicle?

This interrogatory is narrowly tailored to the factual issue of Defendant Cameron's location when Defendant Hollins used excessive force on Montgomery.

**INTERROGATORY NO. 4**: Did Defendant Cameron turn his back to the officer that was assisting Montgomery from the vehicle?

This interrogatory is narrowly tailored to the factual issues of Defendant Cameron's location and whether Defendant Cameron had time to intervene when Defendant Hollins used excessive force on Montgomery.

**INTERROGATORY NO. 5**: When Defendant Cameron looked inside of the vehicle, did he actually enter the vehicle or did he remain outside of the vehicle?

This interrogatory is narrowly tailored to the factual issues of Defendant Cameron's location and whether Defendant Cameron had time to intervene when Defendant Hollins used excessive force on Montgomery.

**INTERROGATORY NO. 6**: How far away from Montgomery was Defendant Cameron when Montgomery was frisked?

This interrogatory is narrowly tailored to the factual issues of Defendant Cameron's location and whether Defendant Cameron had time to intervene when Defendant Hollins used excessive force on Montgomery.

**INTERROGATORY NO. 7**: While providing "cover," was Defendant Cameron watching the interaction between Montgomery and the other officers?

This interrogatory is narrowly tailored to the factual issue of whether Defendant Cameron had time to intervene when Defendant Hollins used excessive force on Montgomery.

**INTERROGATORY NO. 8**: When providing cover, did Defendant Cameron have the ability to intervene if the suspect began assaulting an officer?

This interrogatory is narrowly tailored to the factual issues of Defendant Cameron's location and whether Defendant Cameron had time to intervene when Defendant Hollins used

excessive force on Montgomery. Defendant Cameron's ability to intervene during an assault by the suspect is directly relevant to his ability to intervene during an assault by an officer. If Cameron was providing cover as he claims, then he would have been doing so with the ability to stop the suspect, Montgomery, from fighting or fleeing. Thus, if Cameron had the ability to stop Montgomery from assaulting an officer, Cameron also had the ability to stop the officers from using excessive force on Montgomery.

**REQUEST FOR PRODUCTION NO. 1**: All audio/video recordings of the interaction with Montgomery that makes the basis of this lawsuit, which demonstrate Defendant Cameron's location with regard to the force used against Montgomery.

This request for production is narrowly tailored to the factual issues of Defendant Cameron's location and whether Defendant Cameron had time to intervene when Defendant Hollins used excessive force on Montgomery.

## CONCLUSION

Plaintiff respectfully requests that this Court grant leave for Plaintiff to conduct the limited discovery requested herein so that Plaintiff can adequately respond to Defendant Cameron's Motion for Summary Judgment. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

/s/ *James P. Roberts*
SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001

___

Tel: (214) 987-4100  
Fax: (214) 922-9900  
scott@scottpalmerlaw.com  
james@scottpalmerlaw.com  

ATTORNEYS FOR PLAINTIFF

## Certificate of Service

I certify that on September 3, 2019, this document was filed and served through the ECF system on all counsel of record.

/s/ *James P. Roberts*
JAMES P. ROBERTS